THE HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9             WESTERN DISTRICT OF WASHINGTON

10

11  BRADLEY SHAW, THOMAS MCCARTHY,              CASE NO. 2:20-cv-01620-RAJ
    MICHELLE M. CHEVALIER-FLICK, and
12  MARK SPIVEY on behalf of themselves and all     **PLAINTIFFS' UNOPPOSED MOTION FOR**
    others similarly situated,                      **PRELIMINARY APPROVAL OF CLASS**
13                                                   **ACTION SETTLEMENT**
                    Plaintiffs,
14
            v.
15                                                   **Note on Motion Calendar: April 15, 2021**
    SCHELL & KAMPETER, INC. d/b/a
16  DIAMOND PET FOODS INC.,

17                  Defendant.

18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2

Page No.

3

I.      INTRODUCTION ................................................................................. 1

4

II.     BACKGROUND .................................................................................. 1

5

       A.      Plaintiffs' claims regarding Diamond's "Grain Free" pet food products ............. 1

6

       B.      Procedural history of this matter and related matters................................. 2

7

III.    THE SETTLEMENT AGREEMENT....................................................... 4

8

       A.      The proposed nationwide Settlement Class ......................................... 4

9

       B.      Settlement consideration ................................................................ 5

10

       C.      Proposed notification plan.............................................................. 6

11

       D.      Claims process ........................................................................... 7

12

       E.      Opt-outs and objection procedures.................................................. 8

13

       F.      Release of claims........................................................................ 9

14

       G.      Class Counsel's fees and expenses and Plaintiffs' service awards ................. 9

15

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL............................ 10

16

V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.......11

17

       A.      The Settlement was negotiated at arm's-length .................................... 11

18

       B.      The relief provided by the Settlement is adequate ................................. 12

19

           1.      The strength of Plaintiffs' case .............................................. 12

20

           2.      Benefit for Class Members ................................................... 13

21

           3.      The risk of ongoing litigation................................................ 15

22

           4.      The extent of discovery and status of proceedings ....................... 15

23

           5.      Experience and views of counsel ............................................ 16

24

           6.      Fair distribution to Settlement Class Members ........................... 17

25

           7.      Reasonableness of fees........................................................ 17

26

VI.     THIS COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND
       ENTER A PRELIMINARY APPROVAL ORDER.................................... 18

27

       A.      The proposed Settlement Class should be certified ............................... 18

28

B.    The Class Satisfies Rule 23(a) ................................................................ 19

    1.    Numerosity .................................................................................. 19

    2.    Commonality ............................................................................... 19

    3.    Typicality .................................................................................... 20

    4.    Adequacy ..................................................................................... 20

C.    The Class Satisfies Rule 23(b)(3) ........................................................... 21

    1.    Common Questions of Law and Fact Predominate................................ 21

    2.    A Class Action is the Superior Mechanism for Adjudicating this Dispute ................................................................................ 22

VII.    THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND SHOULD BE APPROVED................................................................................................ 22

VIII.    PROPOSED SCHEDULE OF EVENTS .................................................................... 24

IX.    CONCLUSION ............................................................................................... 24

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Acosta v. Trans Union, LLC,*
243 F.R.D. 377 (C.D. Cal. 2007) ............................................................... 10

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...................................................................... 18, 21

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ..................................................................... 11

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
No. C 06-3903 TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .............. 15

*Dennings v. Clearwire Corp.,*
No. C10-1859JLR, 2013 WL 1858797 (W.D. Wash. May 3, 2013),
aff'd (Sept. 9, 2013) ...................................................................... 18

*Estate of Brown v. Consumer Law Assocs.*, No.,
2013 EL 2285368 (E.D. Wash. May 23, 2013) .......................................... 17

*Fulford v. Logitech, Inc.,*
No. 08-cv-02041 MNC, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ........ 15

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............... 12

*Gehrich v. Chase Bank USA, N.A.,*
316 F.R.D. 215 (N.D. Ill. 2015) ................................................................... 17

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ............................................................ *Passim*

*Hansen v. Ticket Track, Inc.,*
213 F.R.D. 412 (W.D. Wash. 2003) ........................................................... 20

*Hughes v. Microsoft Corp.,*
No. C98-1646C, 2001 WL 34089697 (W.D. Wash. 2001) ............................ 11

*Ikuseghan v. Multicare Health Sys.,*
No. 3:14-cv-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ............ 12, 18

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ..................................................................... 11

*In re Hyundai & Kia Fuel Econ. Litig.,*
926 F.3d 539 (9th Cir. 2019) ..................................................................... 23

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) ............................................................ 15, 16, 18

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010)....................................................................................18

*In re Netflix Privacy Litig.*,
    No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).......................15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)....................................................................................10

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    227 F.R.D. 553 (W.D. Wash 2004) ...........................................................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018)....................................................................................17

*McCrary v. Elations Co., LLC*,
    No. EDCV 13-00242, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ............19

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)..............................................................................12, 13

*Ortiz v. Fiberboard Corp.*,
    527 U.S. 815 (1999)................................................................................................12

*Pappas v. Naked Juice Co of Glendora, Inc.*,
    No. LA CV11-08276 JAK (PLAx), 2014 U.S. Dist. LEXIS 200645
    (C.D. Cal. Jan. 2, 2014)...........................................................................................14

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968)................................................................................................11

*Retta v. Millennium Prods., Inc.*,
    No. CV15-1801, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ...................................17

*Rinky Dink, Inc. v. World Business Lenders*,
    Case No. C14-0268-JCC, 2016 WL 3087073 (W.D. Wash. May 31, 2016).................15

*Ruch v. AM Retail Grp., Inc.*,
    No. 14-cv-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)........................12

*Schiller v. David's Bridal, Inc.*,
    No. 10–616, 2012 WL 2117001 (E.D. Cal. Jun.11, 2012) ...........................................18

*Singer v. Becton Dickinson & Co.*,
    No. 08–821, 2010 WL 2196104 (S.D. Cal. Jun.1, 2010)..............................................18

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ..............................................................................19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)....................................................................................20

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ................................................................. 19

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal.2010) ................................................................. 18

*Vizcaino v. Microsoft Corp.*,
    142 F. Supp. 2d 1299 (W.D. Wash. 2001), aff'd, 290 F.3d 1043 (9th Cir. 2002) ........... 18

*WalMart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 19

*Woodard v. Labrada*,
    No. EDCV 16-00189 JGB (SPx), 2019 U.S. Dist. LEXIS 162782
    (C.D. Cal. Apr. 23, 2019) ......................................................................... 10

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .................................................................... 21

**FEDERAL RULES**

Fed. R. Civ. P. 23(a)(1) ................................................................................ 19

Fed. R. Civ. P. 23(a)(2) ................................................................................ 19

Fed. R. Civ. P. 23(a)(3) ................................................................................ 20

Fed. R. Civ. P. 23(a)(4) ................................................................................ 20

Fed. R. Civ. P. 23(b)(3) ................................................................................ 21

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 22

Fed. R. Civ. P. 23(e)(1) ................................................................................ 22

Fed. R. Civ. P. 23(e)(2) ................................................................................ 11

**OTHER AUTHORITIES**

1H. Newberg & Conte, Newberg on Class Actions § 3.10 (1992) ............................. 19

1H. Newberg & Conte, Newberg on Class Actions §11.28 (1992) ............................. 20

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ..................... 12

*Manual for Complex Litigation* (Fourth) § 21.632 (2012) .................................... 10

*Manual for Complex Litigation* (Fourth) § 21.633 (2012) .................................... 23

1

## I.    INTRODUCTION

2    Plaintiffs Bradley Shaw, Thomas McCarthy, Michelle Chevalier-Flick, and Mark Spivey

3    ("Plaintiffs"), individually and on behalf of the proposed settlement Class, seek preliminary approval of

4    a proposed Settlement of their claims against Defendant Schell & Kampeter, Inc. d/b/a Diamond Pet

5    Foods Inc. ("Diamond"). The Settlement Agreement, if approved, will provide for cash benefits for

6    consumers who purchased certain Diamond pet food products and will resolve all claims of Plaintiffs

7    and the members of the Class deriving from their purchase of particular Diamond pet food products. *See*

8    Declaration of Gary E. Mason ("Mason Dec."), Exhibit 1: Settlement Agreement ("Agreement").

9    The proposed Settlement Agreement in this action is the product of extensive arms'-length

10    negotiations between the Parties through their experienced and informed counsel, facilitated by the

11    Honorable Wayne R. Andersen (Retired) and Honorable Diane Welsh (Ret.) of JAMS, both respected

12    retired judges and mediators, and this Settlement Agreement warrants approval as the terms are fair,

13    reasonable, and adequate. Accordingly, Plaintiffs request that the Court (1) preliminarily approve the

14    proposed Settlement, (2) certify the Class for settlement purposes only, (3) appoint Plaintiffs as the Class

15    Representatives, (4) appoint Plaintiffs' counsel as Class Counsel, (5) order that notice be distributed to

16    the Class pursuant to the proposed Notice Plan, and (6) schedule a Final Approval Hearing. Diamond

17    does not oppose the relief sought in this Motion.

18    ## II.    BACKGROUND

19    ### A.  Plaintiffs' claims regarding Diamond's "Grain Free" pet food products.

20    This case arises from the sale of pet food products that Diamond both manufactures and represents

21    are "Grain Free." Diamond makes these representations on its product labels, where consumers or

22    purchasers see and rely on them before making their purchase. A complete list of the Diamond Products

23    ("Products") at issue in this matter are included in Exhibit E to the parties' proposed Settlement

24    Agreement. *See* Agreement, Ex. E. Plaintiffs allege that Diamond made false and misleading

25    representations about the qualities and ingredients of these Products. First Amended Complaint ("FAC"),

26    ECF No. 26, ¶¶ 49-58. Plaintiffs further allege that Diamond's misrepresentations regarding the

27    ingredients in the Products are false and are material to consumers who purchase the Products. *Id.*

28    Specifically, Plaintiffs allege the Products contain grain and undisclosed proteins (the "defect"), as

detected by Plaintiffs' expert in independent analyses of the ingredients in certain Diamond Products using the industry standard Q-PCR method of DNA testing. FAC ¶ 58. Plaintiffs allege that they would not have purchased the Products on the same terms, had they known that they in fact contained non-conforming ingredients. FAC ¶¶ 23, 35, 43, 48. Plaintiffs allege they would have either not purchased the Products or would have paid less for the products as result of the false and misleading representations on the products' labels, they suffered damages. *Id.*

### B. Procedural history of this matter and related matters.

On September 18, 2020, after extensive investigation and expert analyses of various Diamond products, Plaintiff Mark Spivey filed his action in the United States District Court for the Central District of California, Case No. 8:20-cv-01788 ("*Spivey* Action"), alleging Defendant misrepresented its Taste of the Wild dog food as "grain-free." Mason Dec. ¶ 3. The Taste of the Wild products at issue are manufactured by Diamond. On November 3, 2020, Plaintiffs Shaw and McCarthy filed their case in the United States District Court for the Western District of Washington, Case No. 2:20-cv-01620 ("*Shaw* Action"), similarly alleging Defendant misrepresented its Kirkland dog food products as "grain-free." Bryson Dec. ¶ 3. Plaintiffs in both the *Shaw* Action and *Spivey* Action alleged Diamond violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) (the "UCL"), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*) (the "FAL"), and California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750) (the "CLRA"). *See generally, Shaw* Action Compl.; *Spivey* Action Compl. Plaintiff Shaw claimed Diamond violated the Washington Consumer Protection Act (Wash. Rev. Code. Ann. §§ 19.86.010, *et seq.*) (the "WCPA"), New York General Business Law §§ 349 and 350 (the "NY GBL"). *See, generally, Shaw* Action Complaint. In addition, Plaintiffs alleged claims against Diamond for breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment—each of which is related to the sale, advertising, marketing, labeling, distribution, and manufacturing of Diamond's various "grain-free" pet food products. Plaintiffs brought these claims on behalf of a putative nationwide class of consumers, as well as putative subclasses for California, New York, Ohio, and Washington consumers. *See generally, Shaw* Action Compl.; *Spivey* Action Compl.

From late 2020 through early 2021, counsel for the Parties participated in negotiations to resolve these matters, including participating in two all-day mediations. Mason Dec. ¶ 9. The first mediation, on

October 8, 2020 took place with Hon. Wayne Andersen (Ret.) of JAMS. Mason Dec. ¶ 9. The second mediation, with Hon Diane Welsh (Ret.) of JAMS, took place on January 25, 2021. *Id.* The mediations were contentious but productive, and with the assistance of the mediators, the Parties were able to agree on a settlement structure and agreed to continue to work together to resolve and flesh out the details of the Settlement. *Id*. at ¶ 10. Although the details of the proposed Settlement were not fully resolved at the mediation, on February 12, 2021, the Defendants filed a Notice of Settlement and moved to stay the *Shaw* Action. *Shaw* Action, ECF No. 21. The Court in the *Shaw* Action denied that motion, instead moving all deadlines and requiring the Parties to file a motion for preliminary approval of class action settlement by April 15, 2021. *Shaw* Action, ECF No. 22.

With the on-going assistance of Hon. Welsh, the parties continued to negotiate at arms' length through a multitude of follow-up communications, negotiating every aspect of the settlement. Mason Dec. ¶ 12, Bryson Dec. ¶ 8. The Parties did not discuss attorneys' fees and costs, or potential plaintiff service awards until after they agreed on the material terms and structure of the settlement, including the definition of the Class, the benefits to the Class, and the scope of released claims. Mason Dec. ¶ at ¶ 13, Bryson Dec. ¶ 8. After hard-fought negotiations, on or about February 23, 2021, the Parties reached an agreement on the central terms of the Settlement. *Id.* at ¶ 14.

On March 2, 2021, Defendant filed a Notice of Settlement and Motion to Stay the *Spivey* Action, informing the Court of the Parties' intent to move for preliminary approval of settlement in the parallel *Shaw* Action, and once the amended complaint was filed, to dismiss Plaintiff Spivey's claims in the Central District of California. *See Shaw* Action, ECF 24. On March 3, 2021, the Court in the *Spivey* Action, having reviewed Defendant's Notice of Settlement and Motion to Stay, extended the stay on litigation in the *Spivey* Action until April 15, 2021. *See Shaw* Action, ECF 25.

Over the next seven-plus-week period, the parties continued to negotiate terms of settlement, resolve their differences, and solidify the notification plan to maximize the reach of the settlement's notice to potential class members, made much more difficult by the lack of consumer names or purchase records, a problem that is inherent in any class action related to expendable pet food products and which prevents sending direct notice to the class. Mason Dec. ¶ 17, Bryson Dec. ¶ 9. On March 11, 2021, Plaintiffs filed their First Amended Class Action Complaint in the *Shaw* Action, including the claims and

Plaintiffs involved in the *Spivey* Action, as well as those of the *Flick* Action, *Flick v. Costco Wholesale Corporation*, No. A2100448 (Hamilton Cty., Ohio)*, filed* February 4, 2021. Mason Dec. ¶ 18. On or about April, the parties' Agreement was finalized. Bryson Dec. ¶ 11.

Class Counsel has fully analyzed their clients' facts, the information provided by Diamond concerning its Products, and the applicable legal principles. Mason Dec. ¶ 19. After considering the substantial risks of continued litigation and the likelihood that the Action, if not settled now, would be protracted and expensive while offering no guarantee of success for the Class, Class Counsel is satisfied that the Agreement is in the best interests of the Class. *Id.* The terms of the Settlement Agreement are set forth below in Part III. Plaintiffs respectfully ask this Court to certify the Class for the purposes of settlement and preliminarily approve the Settlement Agreement as fair, reasonable and adequate. *Id.*

## III.    THE SETTLEMENT AGREEMENT

### A.  The proposed nationwide Settlement Class.

The parties' Settlement Agreement contemplates certification of the following Class for settlement purposes only:

> All persons residing in the United States who purchased the Products primarily for personal, family, or household purposes, and not for resale, from March 11, 2017 to the date preliminary approval of the settlement is granted.

Mason Dec., Ex. 1, Agreement ¶ I.Y. The Products at issue include all pet food products manufactured of produced by Diamond and marketed or labelled "grain free" or with some similar designation claiming the absence of any grain. Agreement, ¶ I.T. Such Products include those listed in Exhibit E to the proposed Agreement. Agreement, Ex. E.

The Agreement's Class definition is tethered to the legal claims against Diamond in this action because the proposed Class includes only persons who purchased specific Diamond Products within the Class Period, and is limited to only those persons who purchased the pet food products for household use. Agreement ¶ I.Y. It is narrowly tailored because the Class specifically excludes jurists, mediators, plaintiffs' or defense counsel and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Diamond, any entity in which Diamond has a controlling interest, any of Diamond's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate

family; Costco, any entity in which Costco has a controlling interest, any of Costco's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and any persons who timely opt out of the Settlement Class. *Id.*

### B. Settlement consideration.

The Settlement Agreement provides for both injunctive benefits for the class as a whole and monetary benefits made available to every Class member who submits a valid and timely claim form, regardless of whether the Class member has retained a proof of purchase for the Products.

The injunctive relief requires Diamond to revise product labels and marketing references so that any label that makes a "grain free" claim adds information that is substantially equivalent to the language currently used by Diamond on Taste of the Wild grain free products—namely: "The facility in which this food is made also makes food that may contain other ingredients, such as grains. Trace amounts of these other ingredients may be present." Agreement ¶ IV.A.1.

Additionally, each Class member who submits a valid claim, as determined by the Settlement Administrator, shall receive a monetary benefit which shall be paid after the Effective Date of the Settlement as defined by the Settlement Agreement (¶ I.O), subject to the following conditions and requirements:

> **Option 1**: A Class Member who provides valid Proofs of Purchase for qualifying products during the Class Period may recover up to ten dollars ($10.00) for each purchase of a Product made by the Class Member and may make up to ten (10) Claims for a maximum of one hundred dollars ($100.00).

> **Option 2**: A Class Member who does not provide valid Proof of Purchase may recover exactly five dollars ($5.00) for purchases of a Product made by the Class Member.

Class Members may only submit one claim per Household. Agreement ¶ IV.B.1. Valid Claims submitted shall be paid by Diamond, subject to a total maximum, or cap, of four million dollars ($4,000,000). Agreement ¶ IV.B.3. Should the amount Valid Claims exceed the Settlement Cap, the benefit payable to each claim will be reduced on a pro rata basis. *Id.*

The parties have agreed that a Class Member may provide one of several types of evidence of their purchase to qualify for the larger monetary benefit. Proof of purchase means receipts, copies of

receipts, or other documentation that reasonably establishes the fact and date of the purchase of the Products during the Class Period in the United States or its territories. Agreement ¶ I.U.

The Parties have agreed to recommend that the Court appoint Heffler Claims Group as Settlement Administrator to design, consult on, and implement related requirements of this Settlement, including for example, distributing the notice for publication, creating and maintaining the settlement website, claims review, collection of objections if any, and effecting other requirements of this Settlement, subject to the Court's approval. Agreement ¶ I.W. Diamond has agreed to be responsible for paying all fees and expenses incurred by the Settlement Administrator in administering claims, separate and apart from the $4,000,000 Settlement Cap available for Class Member Claims. *Id.*

### C.  Proposed notification plan.

Pending this Court's approval, Heffler Claims Group ("Heffler") will serve as the Notice and Settlement Administrator. Heffler will be responsible for administrating the Notice Program and administering the claims process including determining and paying valid claims to Settlement Class Members. The Notice Program consists of multiple components, designed to reach no less than 80 percent of the target audience, which is defined as all consumers who purchase "other" brand dry pet food (*i.e.,* brands other than Alpo, Eukanuba, Pedigree, Purina, etc.). *See* Exhibit 1, Decl. of Jeanne C. Finegan, Chief Media Officer of Heffler Claims Gorup LLC, at ¶ 18. While the actual class is much smaller than the target audience population, the Notice Plan is calculated to reach the larger target audience population. *Id.* In addition, the Notice Plan will have an estimated minimum frequency (the average number of times each Class member will have the opportunity to see the message) of 2 times. *Id.* ¶ 19. Thus, the Notice Plan is designed to reach approximately 80 percent of the target audience using reach calculation methodology that is consistent with many nationwide court-approved class action notice programs. *Id.* As detailed further in the Settlement Administrator' declaration, the Notice Plan will include the following elements: (1) targeted online display banner advertising; (2) "Keyword Search" targeting class members; (3) a press release; (4) social media advertising on Facebook, Instagram, and Twitter; (5) a settlement informational website; and (6) a 24-hour, 7-day a week toll-free information telephone line. *Id.* ¶¶ 20-27.

The form of the proposed Long Form Notice and Summary Notice, as agreed upon by Class Counsel and Diamond and subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B and D respectively. The Notice Administrator will establish an official settlement website that will serve as a "landing page for the banner advertising," provide detailed information about the Settlement (explained further at Finegan Decl. ¶ 38), how to obtain Notices, and how to submit Claim Forms. *Id.* The website will also provide forms for class members to exclude themselves from the Settlement; and related information, including the Settlement Agreement, Court orders, and Plaintiffs' Motion for Approval of Fees, Expenses, and Incentive Awards. *Id.* The Settlement Administrator shall also establish a Toll-Free phone number with recordings of information about this Settlement, and will remain open and accessible through the Claim Deadline. *Id.* ¶ 39.

The Notice Program is designed to reach as many Settlement Class members as practicable, provide the Settlement Class with important information regarding the Settlement and the members' rights, including a description of the material terms of the Settlement; the date by which Settlement Class members are able to exclude themselves from or "opt-out" of the Settlement Class; the date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; give notice (and updates if necessary) about the date of the Final Approval Hearing; and provide accessible information regarding the Settlement Website where Settlement Class members may access the Agreement, and other case-related documents.

### D. Claims process.

Class Members shall have access to the Claim Form via the Settlement's website. Settlement, Ex. A ("Claim Form"). Class Members may choose to submit a Claim Form either by completing a paper Claim Form and submitting it to the Settlement Administrator via first class mail, or by submitting a Claim Form electronically online from the website. Agreement ¶ IV.B.6. If mailed, the Claim Form must be postmarked or if submitted electronically, it must be submitted online no later than the claim form deadline. *Id.* A Claim Form postmarked or submitted online after the Claim Form Deadline will not be considered a valid claim form. The Settlement Administrator may track Claim Forms with unique Class Member identifiers. Agreement ¶ IV.B.1. For Claim Forms that are submitted online, every Class Member shall be provided the opportunity on the Claim Form to upload Proof of Purchase image files

(e.g., .jpg, .tif, .pdf). Agreement ¶ IV.B.6. Class Members submitting Claim Forms by mail should include hard copy Proof of Purchase with their Claim Form.

On each Claim Form, the Class Member must provide and certify the truth and accuracy of the following information under the penalty of perjury, including by signing the Claim Form physically or by e-signature, with the warning that any unsigned claim will not be considered eligible for a benefit by the Settlement Administrator. Agreement ¶ IV.B.5. Each claim will require: (a) the Class Member's name and mailing address; (b) the Class Member's email address (unless the Class Member returns the claim form by mail, in which case an email address is optional); (c) A statement that the claimed purchases were direct retail purchases by the claimant and that the purchases were not made for purposes of resale, commercial use, or any other purpose; and (e)for all claimed purchases that are not supported by Proof of Purchase: the Product name(s), the approximate date(s) of purchase, the approximate price(s), the name of the retail store and the store location of each purchase. *Id.*

### E.  Opt-outs and objection procedures.

Opt-outs: Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator either online or at the address designated in the Long Form Notice. Agreement ¶ VIII.H. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Diamond, subject to any defenses that Diamond may have against those claims. The Settlement Agreement Long Form Notice details the requirements to properly opt-out of the Settlement Class. Agreement ¶ I.B; Long Form Notice at pages 10-11. Settlement Class members must opt-out of the Settlement Class by the Objection/Exclusion Deadline or will be subject to all releases of the Settlement Class. *See* Agreement ¶VIII.H; Long Form Notice at pages 10-11. Not later than fourteen days before the date of the Fairness Hearing, the Settlement Administrator shall prepare a list of those persons who have opted out of the Class, and Class Counsel shall file that list with the Court. Agreement ¶ VIII.K.

Objections: Any Class Member who intends to object to the fairness, reasonableness, and/or adequacy of the Settlement must file a written objection with the Court and send the written objection to the Settlement Administrator, emailed or postmarked no later than the date specified in the Preliminary Approval Order. Agreement ¶ VIII.A. Class Members who object must provide certain information,

including a written statement of their objection(s) and the reasons for each objection, as well as a detailed list of any other objections submitted by the Class Member, or his/her counsel, to any class actions in any court, whether federal, state, or otherwise, in the United States in the previous five (5) years. *Id.*

The Settlement Administrator will provide copies of all requests for exclusion, objections, and/or related correspondence from the Class to Class Counsel and Defense Counsel, including a complete opt-out list and copies of the opt-out requests, which will be filed with the Court no later than fourteen (14) days before the Fairness Hearing. Agreement ¶ VIII.K.

### F. Release of claims.

In exchange for the Settlement consideration, Plaintiffs and each Settlement Class Member, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against Diamond as defined in the Settlement Agreement. Agreement ¶ VI. The "Released Claims" and the "Released Parties" are defined in Section VI of the Settlement Agreement. *Id.* The release is narrowly tailored to include only claims against Diamond as related to the Products at issue in the Settlement, i.e., those products named in Exhibit E to the Agreement. The released claims are those that (1) were asserted or could have been asserted in this Action, and those that (2) arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, occurrences, or events that were or could have been directly or indirectly alleged or referred to in the Action. Agreement ¶ VI.A. The Released Claims specifically exclude claims related to personal injury allegedly arising out of use of the Products. Agreement ¶ VI.A.

### G. Class Counsel's fees and expenses and Plaintiffs' service awards.

As a term of their Agreement, Class Counsel may make an application to the Court for an award of Attorneys' Fees and Expenses in this action which will be paid by Diamond separate and apart from the Settlement Cap and shall be the sole aggregate compensation received by Class Counsel. Agreement ¶ V.A. Diamond has agreed not to oppose Class Counsel's request for an award of attorneys' fees and expenses of up to $1,200,000 and have agreed not to undermine that request or solicit others to do so. Agreement ¶ V.A. Likewise, Class Counsel has agreed not to seek or accept fees or expenses in excess of this amount. *Id.* The procedure for and the allowance or disallowance by the Court of any application for Attorneys' Fees and Expenses or for Incentive Awards are not part of the settlement of the Released

1    Claims as set forth in this Settlement and are to be considered by the Court separately from the Court's

2    consideration of the fairness, reasonableness, and adequacy of the settlement of the Released Claims as

3    set forth in this Settlement. Agreement ¶ V.B.

4        In addition, and in recognition of the time and effort Plaintiffs have expended in pursuing this

5    matter, and for agreeing to fulfill their obligations and responsibilities as class representatives, overseeing

6    that relief will be conferred on all Class Members by the Settlement, the parties have agreed that Class

7    Counsel may ask the Court for the payment of a Service Award to each of the Plaintiffs. Agreement ¶

8    V.C. Defendant agrees to pay up to a total of five thousand dollars for Service Awards to each Plaintiff,

9    up to a total of $20,000. Plaintiffs and Class Counsel have agreed that they will not seek or accept Service

10   Awards that exceed those amounts. *Id.*

11   **IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL**

12       Approval of class action settlements is a multi-step process. *See Manual for Complex Litigation*

13   (Fourth) § 21.632 (2012). First, the Court must make a preliminary determination whether the proposed

14   settlement is "potentially fair, as the Court will make a final determination of its adequacy at the

15   hearing on Final Approval." *Acosta v. Trans Union, LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007)

16   (emphasis in original); see also *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 U.S. Dist.

17   LEXIS 162782, at *8 (C.D. Cal. Apr. 23, 2019). The court's role at the preliminary approval stage is to

18   ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the

19   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

20   concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *see also*

21   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

22       While the district court has discretion regarding the approval of a proposed settlement, it should

23   give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027.

24   Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and

25   adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of

26   settlement. "Basic to this process in every instance, of course, is the need to compare the terms of the

27   compromise with the likely rewards of litigation." *Protective Committee for Indep. Stockholders of TMT*

28   *Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Courts will approve class action

settlements entered into after good-faith, arm's-length negotiations. *See Hughes v. Microsoft Corp.,* No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. 2001); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 227 F.R.D. 553, 567 (W.D. Wash 2004).

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Under Rule 23(e)(2), a district court considers whether (A) the class representatives and their counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (v) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

These factors are similar to those previously identified by the Ninth Circuit, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1026[1]; *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the balance of these factors readily establishes that the Settlement should be preliminarily approved.

### A.    The Settlement was negotiated at arm's-length.

The parties negotiated the settlement at arm's length over the course of many weeks. "Arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements." *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-05539-BHS, 2016 WL 3976569, *3 (W.D. Wash. July 25, 2016); *see also Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement

---

[1] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement," *Hanlon*, 150 F.3d at 1026, which must wait until the final approval.

1    amount as good evidence of the maximum available if one can assume that parties of equal knowledge

2    and negotiating skill agreed upon the figure through arms-length bargaining.").

3    The negotiations were conducted with the assistance of experienced mediators. The court may

4    "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of

5    settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*,

6    No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v.*

7    *West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Here, the settlement negotiations were hard-

8    fought, requiring two mediation sessions with retired judges who have a wealth of experience with

9    similar false labeling and misrepresentation cases, including others involving pet foods. Mason Dec. ¶ 9-

10   14. After arriving at a preliminary settlement understanding, the parties participated in multiple follow-

11   up and mediator-advised communications over a period of several months. *Id.* at ¶ 13-17. *See Ruch v.*

12   *AM Retail Grp., Inc.,* No. 14-cv-05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016)

13   (holding that the "process by which the parties reached their settlement," which included "formal

14   mediation … weigh[ed] in favor of preliminary approval"); Fed. R. Civ. P. 23(e)(2) advisory committee's

15   note to 2018 amendment ("the involvement of a neutral or court-affiliated mediator or facilitator in

16   [settlement] negotiations may bear on whether they were conducted in a manner that would protect and

17   further the class interests").  The Parties did not discuss attorneys' fees and costs, or potential plaintiff

18   service awards until after they agreed on the material terms and structure of the settlement. Mason Dec.

19   ¶ at ¶ 13, Bryson Dec. ¶ 8. There is no other agreement made in connection with the settlement that must

20   be disclosed under Rule 23(e)(3).

21            **B.  The relief provided by the Settlement is adequate.**

22                   1.     The strength of Plaintiffs' case.

23   When determining the likelihood of a plaintiff's success on the merits of a class action, "the

24   district court's determination is nothing more than an amalgam of delicate balancing, gross

25   approximations and rough justice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San*

26   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). Both parties and their counsel

27   are thoroughly familiar with the applicable facts, legal theories, and potential defenses on both sides. *See*

28

*Id.* at ¶ 17. Plaintiffs believe that the Settlement is an outstanding result considering the issues addressed below. *Id.* at ¶¶ 20-23.

Although Plaintiffs believe that proving Diamond's liability would be possible here, there is no guarantee that a jury would agree. Here, Plaintiffs would have to prove that Diamond was responsible for making false and/or misleading representations and that the presence of grain would be material to reasonable consumers. This inquiry would undoubtedly devolve into an expensive and uncertain "battle of experts." Bryson Dec. ¶ 13. Plaintiffs' case could have been dismissed at a dispositive motion stage and the class could have received nothing. *Id.* In addition, if the case proceeded to trial, Plaintiffs may be required to prove that every member of the class purchased products that contained grain, which would likely be very difficult to do.

Moreover, Plaintiffs would face a strong hurdle at class certification and summary judgment to establish damages against Diamond. Diamond vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs nor the Class suffered any harm or damages. In addition, Diamond would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly higher than achieved here absent such risks. Mason Dec. ¶ 22, Bryson Dec. ¶ 12.  Finally, identification of the Class members for expendable food products like the Products in this case, is difficult at best, unlike an automobile case in which past and present ownership records are readily available. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this early stage in the litigation, when those Class members who are able to access their purchase records are in the best position to benefit most from the offered relief. Bryson Dec. ¶ 14.

## 2.    Benefit for Class Members.

The Settlement Agreement provides significant guaranteed relief to Settlement Class Members, particularly in light of the uncertainty of prevailing at certification or on the merits as discussed above. Class Counsel and the Class Representatives believe the proposed Settlement confers substantial benefits upon the Class, particularly as weighed against the risk associated with the inherent uncertain nature of a litigated outcome; the complex nature of the Action in which Class Counsel have reviewed internal and confidential documents; the difficulty and complexity of calculating actual economic harm attributable

1    to allegedly false and misleading representations related to Diamond's pet food Products; and the length

2    and expense of continued proceedings through additional fact discovery, depositions, expert depositions,

3    third party document productions and depositions, class certification briefing, summary judgment

4    briefing, a jury trial, and appeals. For these reasons, the fourth *Hanlon* factor favors the Court's

5    preliminary approval of the Settlement.

6         Despite the obstacles Plaintiffs faced, they and proposed Settlement Class Counsel, with the

7    assistance of a highly respected mediator, and after careful consideration of the above factors, negotiated

8    an agreement that provides for up to $4,000,000 in direct compensation to Settlement Class Members

9    who submit valid and timely claims. This $4,000,000 Settlement Cap does not include any awarded

10   attorneys' fees, service awards, and costs of notice and administration. The Settlement also includes

11   injunctive relief preventing further harm to consumers.

12        This negotiated value far outweighs the risk of having to produce and defend evidence about: (a)

13   whether or not the non-conforming ingredients in Diamond's Products are uniformly present across the

14   Products; (b) whether or not non-conforming ingredients are even material to reasonable consumers,

15   which is likely to be subject to an expensive and uncertain "battle of the experts"; and (c) whether

16   consumers frequently repeat purchase the same brands and product lines, with many purchasing the

17   Products in a manner that would permit retrieval of Proofs of Purchase to claim the maximum benefits.

18        In addition to the up to $100 that Settlement Class Members can claim with valid Proof of

19   Purchase, the Settlement provides a partial benefit even for those Settlement Class Members who cannot

20   prove they actually purchased the product. This further supports the Settlement's reasonableness.

21   especially in light of the difficulty in providing relief to consumers who cannot provide adequate proofs

22   of purchase for a minor expendable purchase. *E.g., Pappas v. Naked Juice Co of Glendora, Inc.*, No. LA

23   CV11-08276 JAK (PLAx), 2014 U.S. Dist. LEXIS 200645, at *25-*26 (C.D. Cal. Jan. 2, 2014); *See also*

24   *Hill v. Canidae Corp.*, No. 5:20-cv-01374-JGB-SP (C.D. Cal.) (Granted preliminary approval for a proof

25   of purchase class and non-proof of purchase class for pet food purchasers). Therefore, preliminary

26   approval is warranted.

27

28

3.    The risk of ongoing litigation.

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even if Plaintiffs are able to certify a class, there is also a risk that the Court could later decertify the class action. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery … at all." *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MNC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010). Therefore, preliminary approval should be granted.

4.    The extent of discovery and status of proceedings.

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (citing *Linney*, 151 F.3d at 1239 (citing *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982))). "A key inquiry is whether the parties had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink, Inc. v. World Business Lenders*, Case No. C14-0268-JCC, 2016 WL 3087073, at *3 (W.D. Wash. May 31, 2016).

In the matter before the Court, Class Counsel conducted significant pre-litigation research, including the retention of experts to analyze the ingredients of multiple Diamond Products using the industry standard Q-PCR method of DNA testing that is FDA compliant. Bryson Dec. ¶¶ 3-4. Due to the number of conflicts that labs across the country had for testing pet food, it was difficult for Plaintiffs' to

find an expert willing to test the products at issue. *Id.* ¶ 4. In addition, the Plaintiffs consulted with an economist regarding the calculation of damages related to misrepresentations about product ingredients, including regarding calculating damages for paying a price premium for the inclusion or exclusion of certain key ingredients.

Once the parties decided to mediate this matter, prior to and during the course of their mediation and subsequent months of negotiating the details of the proposed settlement, the parties shared certain confirmatory discovery including sales figures and product testing results. *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000). Finally, Class Counsel are actively involved in litigation against similar pet food manufacturers and have gained perspective on this matter from counsels' collective wealth of experience. Although each case, product, and manufacturer has significant differences, the certainty of settlement and the costs and difficulties of protracted litigation in these matters are known to both Class Counsel and Diamond.

The Settlement is thus based upon sufficient information that enabled Class Counsel to weigh the risks of litigation against making benefits immediately available to the Class, and, thus, make an informed decision when negotiating with Diamond.

### 5.    Experience and views of counsel.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation, and more specifically in litigation related to mislabeling and pet foods. *See* Mason Decl. ¶ 28 & Ex. 2-5, Bryson Dec. ¶ 19 & Ex. 1-3. (firm resumes of proposed Class Counsel). Based on their collective experience, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. Bryson Dec. ¶ 20.

6.    <u>Fair distribution to Settlement Class Members.</u>

The Settlement structure mirrors structures approved as fair and reasonable in prior food mislabeling cases. *See, e.g., Retta v. Millennium Prods., Inc.*, No. CV15-1801, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017). The *Retta* plaintiffs alleged that the defendant's kombucha tea labels used the term "antioxidant" when they contained none, were labeled as "non-alcoholic" when they contained alcohol in excess of the amount permitted for non-alcoholic beverages, and understated the amount of sugar in the drinks. *Id.* at *1. The court granted final approval of a settlement that required defendant to cease making certain representations on its product labels and add warnings to the labels, and provided a settlement fund from which class members could claim differing amounts in either cash or product vouchers based on whether they could provide proof of purchase. *Id.* at *2. The structure of the settlement here is similar and should also be approved.

The differing claim amounts for class members who have proof of purchase is fair and reasonable to the class. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* 895 F.3d 597, 607–609 (9th Cir. 2018) (affirming certification of settlement class and final approval of settlement where settlement class members with weaker claims likely benefitted from inclusion in a class with members who had stronger claims); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 225 (N.D. Ill. 2015) (When some class members have stronger claims than others, it is appropriate to provide larger settlement awards to those class members). Under the settlement, Class Members who can provide proof of purchase recover the same amount ($10) for each purchase up to ten, and those who cannot provide proof of purchase receive the same amount as each other ($5). If the claims exceed the fund, then all members are subject to the same pro rata reduction in payment. Agreement ¶ IV.B.1.

7.    <u>Reasonableness of fees.</u>

Under the Agreement, Class Counsel's application to the Court for an award of Attorneys' Fees and Expenses up to $1,200,000, if granted, will be paid by Diamond separate and apart from the Settlement Cap and Notice and Administration costs. Agreement ¶ V.A. This represent a maximum of 30% of the value of the $4,000,000 settlement fund—an amount that would be reasonable under the circumstances of this case including significant monetary relief for a false labeling claim. *See Estate of Brown v. Consumer Law Assocs.*, No., 2013 EL 2285368, at *3 (E.D. Wash. May 23, 2013) (approving

settlement of class claims under Consumer Protection Act paying class members and estimated 30% of funds collected for challenged debt adjusting practices); *Ikuseghan*, 2016 WL 4363198 at *2 (approving as fair and reasonable an award of 30% of the settlement fund); *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299 (W.D. Wash. 2001), <u>aff'd</u>, 290 F.3d 1043 (9th Cir. 2002) (approving as fair and reasonable an award of 28% of the actual settlement fund); *Dennings v. Clearwire Corp*., No. C10-1859JLR, 2013 WL 1858797, at *8 (W.D. Wash. May 3, 2013), aff'd (Sept. 9, 2013) (35.78%). *See, e.g.,* Final Order Approving Class Action Settlement and Awarding Attorneys' Fees and Expenses at 9, *South Ferry LP # 2 v. Killinger,* No. 04–1599 (W.D. Wash. Jun. 5, 2012) (29%) (previously submitted as Dkt. # 71–1); *Garcia v. Gordon Trucking, Inc.,* No. 10–324, 2012 WL 5364575, at 3, 10 (E.D. Cal. Oct.31, 2012) (33%); *Schiller v. David's Bridal, Inc.,* No. 10–616, 2012 WL 2117001, at *20 (E.D. Cal. Jun.11, 2012) (32.1%); *Singer v. Becton Dickinson & Co.,* No. 08–821, 2010 WL 2196104, at 2, 9 (S.D. Cal. Jun.1, 2010) (33⅓%); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 492 (E.D. Cal.2010) (33.3%); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir.2000) (33⅓%);

The fee motion will be filed two weeks before the deadline for class members to opt-out of or object to the settlement in order to allow class members an adequate opportunity to object. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010).

## VI.    THIS COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND ENTER A PRELIMINARY APPROVAL ORDER

### A.  The proposed Settlement Class should be certified.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). For the reasons below, the Class meets the requirements of Rule 23(a) and (b).

1    **B.  The Class satisfies Rule 23(a).**

2                1.    Numerosity.

3    Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."

4    Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class

5    size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*,

6    190 F.R.D. 649, 654 (C.D. Cal. 2000). Here, the proposed Class easily satisfies the numerosity

7    requirement and is so numerous that joinder of their claims is impracticable.

8                2.    Commonality.

9    Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R.

10   Civ. P. 23(a)(2). Commonality is established if plaintiffs and class members' claims "depend on a

11   common contention," "capable of class-wide resolution … [meaning] that determination of its truth or

12   falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *WalMart

13   Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because the commonality requirement may be satisfied

14   by a single common issue, it is easily met. 1H. Newberg & Conte, Newberg on Class Actions § 3.10, at

15   3-50 (1992).

16   There are ample issues of both law and fact here that are common to the members of the

17   Settlement Class. All Class Members' claims arise from a common nucleus of facts and are based on the

18   same legal theories. Plaintiffs allege that Diamond misrepresented the actual ingredients of its grain-free

19   Products. These alleged misrepresentations were made in a uniform manner to each of the class members.

20   Accordingly, commonality is satisfied by the existence of these common factual issues. *See Tait v. BSH

21   Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012) (commonality requirement met because

22   "claims of all prospective class members involve the same alleged defect"); *McCrary v. Elations Co.,

23   LLC*, No. EDCV 13-00242, 2014 U.S. Dist. LEXIS 8443, at *30 (C.D. Cal. Jan. 13, 2014) (class members

24   were exposed to same labeling claims, creating a "common core of salient facts").

25   Second, Plaintiffs' claims are brought under legal theories common to the Class as a whole.

26   Alleging a common legal theory alone is enough to establish commonality. *See Hanlon*, 150 F.3d at 1019

27   ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal

28   issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with

disparate legal remedies within the class."). Here, all legal theories asserted by Plaintiffs are common to all Class Members. Given that there are virtually no issues of law which affect only individual members of the Class, common issues of law clearly predominate over individual ones. Thus, commonality is satisfied.

### 3.    Typicality.

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020.

The claims of the named Plaintiffs are typical of those of the Class. Like those of the Class, their claims arise out of the purchase of Diamond's grain-free Products for personal or household use after relying on the representations made by Diamond claiming no grain was present, which are on the labels of the products. The named Plaintiffs have precisely the same claims as the Class and must satisfy the same elements of each of their claims, as must other Class Members. Supported by the same legal theories, the named Plaintiffs and all Class Members share claims based on the same alleged course of conduct. The named Plaintiffs and all Class Members have been injured in the same manner by this conduct. Therefore, Plaintiffs satisfy the typicality requirement.

### 4.    Adequacy.

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff will adequately represent the class where: (1) plaintiffs and their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *see also Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 415 (W.D. Wash. 2003). Moreover, adequacy is presumed where a fair settlement was negotiated at arm's length. Newberg on Class Actions, *supra*, §11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Class Members' claims. The arm's-length settlement negotiations that took place and the investigation they undertook demonstrate that Class

Counsel adequately represent the Class. Moreover, the named Plaintiffs and Class Counsel have no conflicts of interests with the Class. Rather, the named Plaintiffs, like each absent Class Member, have a strong interest in proving Diamond's common course of conduct, and obtaining redress. In pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Class. Class Counsel have extensive experience and expertise in prosecuting complex class actions. Class Counsel are active practitioners who are highly experienced in class action and consumer fraud and mislabeling litigation. *See* Mason Decl. ¶ 28, Exs. 2-5, Bryson Dec. ¶ 19 & Ex. 1-3 (firm resumes of proposed Class Counsel). Accordingly, Rule 23(a)(4) is satisfied.

### C. The Class satisfies Rule 23(b)(3).

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

#### 1. Common Questions of Law and Fact Predominate.

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id*. As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that if a trial becomes unnecessary through settlement, its manageability is no longer an issue. *Amchem*, 521 U.S. at 619-620.

In this case, common questions of law and fact exist and predominate over any individual questions, including, in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-

27), *inter alia*: (1) whether Diamond's representations regarding the actual ingredients of its grain free Products were false and misleading or reasonably likely to deceive consumers; (2) whether Diamond violated the CLRA, UCL, FAL and NY GBL §§ 349-350; and (3) whether the Class has been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

When claims revolve around a "common nucleus of facts," the longstanding rule about differing remedies does not preclude class certification applies. *Espinosa*, 926 F.3d at 563. "[I]n deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present intractable management problems.'" *Id.* at 558.

For these reasons, predominance is satisfied.

2.    A Class Action is the Superior Mechanism for Adjudicating this Dispute.

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Diamond's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Accordingly, common questions predominate, and a class action is the superior method of adjudicating this controversy.

## VII.    THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class

members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice. *Manual*, § 21.633, at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court. *Id*. Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id*.

The Notices proposed in this matter accurately inform Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections or to opt-out of the Settlement Class. See the long form notice and summary notice as Agreement, Ex. B. The proposed Long Form Notice will provide concise directions on the requirements and deadlines to submit claims, to request exclusion, or to object to the Settlement. Agreement, Ex. B. The Parties in this case have created and agreed to provide a variety of forms of notice, which collectively will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process. *See* Agreement, Section VIII, and Settlement. Agreement, Exhibit B.

The proposed notice program includes the following components: (a) Online display banner advertising specifically targeted to reach Class members in both the U.S. and its Territories; (b) Keyword Search targeting Class members in both the U.S. and its Territories; (c) A press release across PR Newswire's US1 and Territorial Newslines; (d) Social media through Facebook, Instagram, and Twitter; (e)An informational website, on which the notices and other important Court documents will be posted; and (f) A toll-free information line, by which Class members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or a Claim Form. *See* Finegan Affidavit, ¶ 20.

This proposed notice program provides a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the Settlement.

This notice program is designed to reach at least eighty percent of the targeted Class Members, on average two times each. *Id.* ¶ 40. Thus, the parties' notice plan and procedures satisfy due process.

## VIII.   PROPOSED SCHEDULE OF EVENTS

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. The Parties respectfully propose the following schedule:

| EVENT | DEADLINE |
|---|---|
| Deadline for publishing Notice | Within ten (10) days after the entry of the Preliminary Approval Order (Agreement ¶ VII.A.) |
| Deadline for Objecting to/Excluding from Settlement | 21 days prior to the Final Approval Hearing (see Agreement ¶ I.W.) |
| Deadline to File Response to Objections | No later than seven (7) days before the Final Approval Hearing |
| Deadline to File Motion for Attorneys' Fees, Costs, and Plaintiffs' Service Awards | 14-days prior to the deadline to Object to or Exclude from Settlement |
| Deadline to File Motion for Final Approval | 14-days prior to Final Approval Hearing |
| Final Approval Hearing | Approximately 100 days after the Preliminary Approval Order (see Agreement ¶ I.Q.) |
| Deadline for submitting claims forms | 60 days after Final Approval of Settlement (see Agreement ¶ I.H.) |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order.

1

RESPECTFULLY SUBMITTED AND DATED this 15th day of April, 2021.

2

TERRELL MARSHALL LAW GROUP PLLC

3

By:   /s/ Jennifer Rust Murray, WSBA #36983

4

Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com

5

Jennifer Rust Murray, WSBA #36983
Email: jmurray@terrellmarshall.com

6

Benjamin M. Drachler, WSBA #51021
Email: bdrachler@terrellmarshall.com

7

Ryan Tack-Hooper, WSBA #56423

8

Email: rtack-hooper@terrellmarshall.com
936 North 34th Street, Suite 300

9

Seattle, Washington 98103-8869
Telephone: (206) 816-6603

10

Facsimile: (206) 319-5450

11

Alex Straus

12

Email: alex@gregcolemanlaw.com
GREG COLEMAN LAW PC

13

16748 McCormack Street
Los Angeles, California 91436

14

Telephone: (310) 450-9689

15

Facsimile: (310) 496-3176

16

Lisa A. White, *Admitted Pro Hac Vice*
Email: lisa@gregcolemanlaw.com

17

Arthur Stock, *Admitted Pro Hac Vice*
Email: arthur@gregcolemanlaw.com

18

GREG COLEMAN LAW PC

19

First Tennessee Plaza
800 South Gay Street, Suite 1100

20

Knoxville, Tennessee 37929
Telephone: (865) 247-0080

21

Facsimile: (865) 522-0049

22

Nick Suciu III, *Admitted Pro Hac Vice*

23

Email: nicksuciu@bmslawyers.com
BARBAT, MANSOUR, SUCIU & TOMINA PLLC

24

6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

25

Telephone: (313) 303-3472

26

27

28

J. Hunter Bryson, *Admitted Pro Hac Vice*
Email: hunter@whitfieldbryson.com
WHITFIELD BRYSON, LLP
900 West Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 539-2708

Charlie Schaffer, *Admitted Pro Hac Vice*
Email: cschaffer@lfsblaw.com
David C. Magagna Jr., *Admitted Pro Hac Vice*
Email: dmagagna@lfsblaw.com
LEVIN, SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500

Jonathan Shub
Email: jshub@kohnswift.com
Kevin Laukaitis
Email: klaukaitis@kohnswift.com
SHUB LAW FIRM, LLC
134 Kings Hwy. E., 2nd Floor
Haddonfield, New Jersey 08033
Telephone: (856) 772-7200

Gary E. Mason
Email: gmason@masonllp.com
Danielle L. Perry
Email: dperry@masonllp.com
MASON LIETZ & KLINGER LLP
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016

Jeffrey S. Goldenberg
Email: jgoldenberg@gs-legal.com
GOLDENBERG SCHNEIDER L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291

Philip Friedman
Email: psf@consumerlawhelp.com
FRIEDMAN LAW OFFICES
2001 L Street NW, Suite 400
Washington, DC 20036
Telephone: (202) 293-4175

*Attorneys for Plaintiffs*